Statement.

# Richmond.

## WOLVERTON v. HOFFMAN.

November 23, 1905.

1. DEEDS—*Construction—Case at Bar—Diminishing a Fee Simple.*—A grant by a husband to his wife in fee simple, followed by a "request and desire that the said property shall be the property of X during his lifetime, and then to descend to his children, that is, should he, X, survive" the grantor and his wife, vests in the wife a fee-simple estate. While a deed is to be read as a whole, and effect given to every part, if possible, in order to carry out the intention of the parties, yet where a fee simple is given in one part of the deed by clear, unambiguous and explicit words, it is not to be diminished or destroyed by subsequent words in the deed less clear and decisive than those which create it.

Error to a judgment of the Circuit Court of Shenandoah county, in an action of ejectment. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The portion of the deed not set out in the opinion of the court is in the words and figures following, to-wit:

"This deed made this 18th day of September, A. D. 1884, between George Wolverton of the one part and Leannah Wolverton, his wife, of the other part and George Wolverton, trustee for Leannah Wolverton of the third part, all of Shenandoah county, and State of Virginia.

"Witnesseth that for and in consideration of the sum of one dollar in hand paid by the said party of the second part to the

party of the first part and in consideration of the natural regard that he the said Wolverton has and bears for her, said Leannah Wolverton. The said George Wolverton has granted, bargained and sold, and by these presents does grant, bargain and sell to said Leannah Wolverton, her heirs and assigns, three pieces or parcels of land situated in said county of Shenandoah, Virginia, lying on the Fadeley road and near Fadely's saw mill, containing in all 63¼ acres, be the same more or less, and also the personal property now owned by said George Wolverton as follows, viz: 2 horses, 4 cows, 4 head of young cattle, 18 head of sheep, 15 head of hogs and shotes, 1 buggy and harness, all my farming implements and machinery, and all the household and kitchen furniture that I now possess and own."

*Walton & Walton* and *Barton & Boyd,* for the plaintiff in error.

*Tavenner & Bauserman,* for the defendant in error.

Keith, P., delivered the opinion of the court.

The plaintiff in error instituted an action of ejectment against S. J. Hoffman, to recover a parcel of land lying in the county of Shenandoah; and to maintain the issue on his part introduced a deed from George Wolverton to Leannah Wolverton, his wife, by which was conveyed certain real and personal estate. It is declared in this deed, that "it is distinctly understood by and between the parties to this instrument, that the foregoing conveyance is made to be free of and from all debts, claims and demands against said George Wolverton or any other husband that the said Leannah Wolverton may hereafter take (should she survive her present husband), and that said Leannah Wolverton shall have the right to sell and convey the property or any part thereof, at any time that she deems proper in the interest of herself and her husband, George Wolverton, and execute a title for the real estate so sold, such as is legal for a

married woman to make, in uniting in a deed or other con-
veyance, by his joining in the deed. It is also distinctly un-
derstood by and between the parties to this deed that I request
and desire that said property shall be the property of Winfield
Scott Wolverton during his lifetime, and then to .descend to his
children, that is, should he, W. S. Wolverton, survive the said
George and Leannah Wolverton. And the grantor hereby cov-
enants that he has the right to convey the property herein and
hereby conveyed, that the same is free from incumbrance, and
warrants the title to the same generally."

George Wolverton died in the lifetime of his wife, and W.
S. Wolverton survived her. By her will she devises the real
estate in controversy to Samuel J. Hoffman; and the only ques-
tion before us arises upon a construction of the deed above
quoted.

The deed under consideration conveys in plain and unam-
biguous terms a fee simple to Leannah Wolverton. It then says,
that it is "understood by and between the parties to this deed
that I request and desire that said property shall be the property
of Winfield Scott Wolverton during his lifetime, and then to
descend to his children, that is, should he, W. S. Wolverton,
survive the said George and Leannah Wolverton." W. S.
Wolverton did survive George and Leannah Wolverton, and the
contention is, upon the part of plaintiff in error, that under
this deed Leannah Wolverton took a fee, which, in the event
of George Wolverton dying in her lifetime and W. S. Wolverton
surviving her, was reduced to a life estate. In support of this
contention, plaintiff in error relies upon the intent of the
grantor, to be gathered from reading the entire instrument, and
from which he contends that it is made to appear, that it was the
intention of George Wolverton, in the contingency mentioned—
that is, that his wife survived the grantor and that W. S. Wol-
verton survived her—that she should take only a life estate,
with remainder to W. S. Wolverton for life, and to his children
in fee.

---

---

In support of this contention he places great reliance upon the case of *Colton* v. *Colton,* 127 U. S. 300, 32 L. Ed. 138, 8 Sup. Ct. 1164, where the will says:' "I give and bequeath to my said wife, E. M. Colton, all of the estate, real and personal of which I shall die seized and possessed or entitled to.   I recommend to her the care of my mother and sister and request her to make such gift and provisions for them as in her judgment will be best."   The wife not having made any provision, the mother and sister brought suit, and the court held, that "no technical language is necessary for the creation of a trust in a will and no general rule can be formulated for determining whether a devise or bequest carries with it the whole beneficiary interest, or whether it is to be construed as creating a trust. .   .   .   If a trust is sufficiently expressed and capable of enforcement, it is not invalidated by being called 'precatory.' .   .   .   If the objects of the supposed trust are definite and the property clearly pointed out, if the relations between the testator and the supposed beneficiary are such as to indicate a motive on the part of the one person to provide for the other, and if the precatory clause, expressing a wish, authority or recommendation that the donee shall apply the property to the proposed *cestui que trust,* warrants the inference that it is precatory, then it may be held that an obligatory trust is created which may be enforced in a court of equity."

We are, however, in a court of law, where the plaintiff must recover upon the strength of his own title.   We need not, therefore, consider whether or not the language created a trust, for it would be unavailing if such were the case.

Plaintiff in error also relies upon what is without doubt true, that courts, whether of law or of equity, in the construction of written instruments, seek to gather the intention from an examination of the whole paper, and not merely from its disjointed parts, so as to give effect to the whole.   The intention of the grantor is to be sought after, and, when discovered, is to be carried into effect, if it can be done consistently with

the rules of law. Courts will not only look through the entire deed, but will transpose words or sentences, if thereby they can effectuate the intent of the grantor without defeating the intent in any other part. But if in a deed there be two clauses so repugnant to each other that they cannot stand·together, the first shall be received and the latter rejected, differing in this respect from a will. *Blackwell* v. *Blackwell* (N. C.), 32 S. E. 677.

The rule upon the subject is well expressed in Devlin on Deeds, section 837, where it is said: "The intent, when apparent and not repugnant to any rule of law, will control technical terms, for the intent, and not the words, is the essence of every agreement. In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect." But like most rules it has its exceptions. In section 838a, the same author says: "The question is not always one of intent, but of enforcing established and well-defined principles of law," and in that connection cites *Maker* v. *Lazell,* 83 Me. 562, 22 Atl. 474, 23 Am. St. Rep. 795, where the court says: "The defendant invokes the broad proposition that, in considering written instruments, courts should always seek for the actual intent of the parties, and give effect to that intent when found, whatever the form of the instrument. The proposition has been stated perhaps as broadly as this in text-books and judicial opinions, but it is not universally true. It is hedged about by some positive rules of law, which the parties must heed if they would effectuate their intent, or avoid consequences they did not intend. Muniments of title, especially, are guarded by positive rules of law, to secure their certainty, precision, and permanency. If, in the effort to ascertain the real intent of the parties, one of these rules is encountered, it must control, for no positive rule of law can be lawfully violated in the search for intent."

In *Gaskins* v. *Hunton,* 92 Va. 528, 23 S. E. 885, this court

said: "It is a settled rule of construction, both in deeds and wills, that if an estate is conveyed, or an interest given, or a benefit bestowed in one part of the instrument, by clear, unambiguous, and explicit words, such estate, interest, or benefit is not diminished nor destroyed by words in another part of the instrument, unless the terms which diminish or destroy the estate before given be as clear and decisive as the terms by which it was created."

We have seen that the fee simple is conveyed to Leannah Wolverton by the deed under consideration in clear, unambiguous, and explicit words. The language relied upon to reduce that interest from a fee simple to a life estate is not apt and proper for the creation of any estate whatsoever. It cannot be said that it diminishes the estate given by language as clear and decisive as that by which it was created.

The judgment of the Circuit Court is affirmed.

*Affirmed.*