STOKES *v.* STATE.

KENNER *v.* STATE.

Opinion delivered November 22, 1915.

1. DEEDS—CONVEYANCE OF FEE—GAME AND FISH PRESERVE.—Land was deeded to A. and B. as trustees for a shooting club, and recited as follows, "do hereby grant, bargain, sell and convey unto the said * * trustees * * the following lands * *" describing them. The last clause in the deed provided "it is understood that said property is to be used as a game and fish preserve only, and the conveyors herein reserve the right to cut and remove all the timber * * and * * should the * * club abandon the property, or said club cease to exist then and in that event, said lands shall revert to, and the title thereto revest in" the grantor. *Held*, the grantees under the deed did not acquire that right to hunt and fish, on lands in this State, which is possessed by non-resident owns of land (State v. Stokes, 117 Ark. 192).

2. ADVERSE POSSESSION—SHOOTING CLUB.—Members of a hunting and fishing club can not obtain title to a large tract of land by enclosing a small portion thereof, and maintaining thereon a club house and hunting and fishing paraphernalia.

Appeal from Mississippi Circuit Court, Chickasawba District; *W. J. Driver,* Judge; affirmed.

*Mehaffy, Reid & Mehaffy,* for appellant.

1.   The granting clause in this deed is sufficient, both at common law and under the statute, to convey a fee simple estate.

Subsequent clauses must be so construed as to yield to the grant.   If the clause in the habendum or concluding portion of the deed, relating to the use to which the land is to be put, can not stand consistent with the clause in the premises granting an estate in fee simple, the latter must yield.   82 Ark. 211; 82 Me. 562.

In construing a deed, the emphasis has always been placed upon the granting clause, and that construction given which is most unfavorable to the grantor.   53 Ark. 107; 27 Ark. 518, 523.   It is evident from the provision made in the deed for the revesting of the title in the grantors in the event of abandonment or dissolution of the club, that the parties intended to vest title to the land

in the grantees. The use of the words "revest" and "revert" can have no other significance in the instrument. 13 Cyc. 669.

The stipulation that the land is to be used for a particular purpose only, is at most but a condition subsequent which may be waived or forfeited by any conduct on the part of the grantors indicating that the condition will not be insisted upon. 145 Fed. 296; 34 N. C. 194; 18 Conn. 535; 12 Barber (N. Y.) 440; 98 Ark. 329; 59 Ark. 405; 41 Pa. St. 341; 72 Ky. 202, 9 Bush 202.

2. Appellees have acquired title by adverse possession. They have exercised acts of ownership undisputed and unquestioned over the lands upon which they hunted, ever since they were conveyed to them in July, 1901. 88 Ark. 318; 85 Ark. 4; 87 Ark. 168; 87 Ark. 496. See also cases cited in Michie's Digest, Ark. Rep., tit. "Adverse Possession," 105, par 41; 148 Fed. 781; 1 Ruling Case Law, 694, 695.

*Wallace Davis,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

If the real purpose of the deed was merely to confer the right to hunt and fish, the judgments must, under the rule announced in the former decision in the case, be affirmed.

There is no habendum clause in this deed; on the contrary, the clause following the description is clearly a limitation on the grant. The deed is not ambiguous. The intention is plainly discernible from the whole instrument, namely, that the grantor only wanted to give to the hunting club the right to hunt and fish on the lake. 26 S. E. (Va.) 844.

SMITH, J. These cases are identical with the case of *State* v. *Stokes,* reported in 117 Ark. 192, 174 S. W. 1156, except that it is said that the deed as set out in the opinion in the former case was not correctly copied into the record of that case.

The deed as it appears in the record of the present cases is as follows:

"Know All Men by These Presents:

"That the Paepcke-Leicht Lumber Company and Chicago Mill & Lumber Company, for and in consideration of five dollars to them paid by W. H. Jackson, president, and J. H. Acklen, secretary, as trustees for Big Lake Shooting Club, a social organization, do hereby grant, bargain, sell and convey unto the said W. H. Jackson and J. H. Acklen, trustees as aforesaid, and unto their successors in the offices of president and secretary, respectively, of Big Lake Shooting Club, the following lands and waters lying in the county of Mississippi and State of Arkansas, towit:

"*First.* Beginning at a point ten feet east of where the original survey of the United States Government, made about the year 1834, defining the shore line of Big Lake, intersects with the line between the States of Missouri and Arkansas, and near the center of section 19, township 16 north, range 10 east, running thence southwardly and always ten feet east of and parallel with the shore line of the original survey as it meanders through sections 19, 20, 29 and 32 in said township, also through sections 5, 8, 17, 18, 19 and 30 of township 15 north, range 10 east, also through sections 25 and 36 of township 15 north, range 9 east, to the north line of section 1, in township 14 north, range 9 east, together with all accretions to each of said sections and fractional sections westward to the thread of Little River, in Big Lake.

"*Second.* Beginning at a point ten feet west of where the half section line running east and west of section 33, of township 15 north, range 9 east, intersects the shore line of Big Lake in the original survey of the United States Government, running thence southwardly and always ten feet west and parallel with the shore line of the said survey, as it meanders through said section 33, and also through sections 4 and 9, of township 14 north, range 9 east, to the north line of section 16, of said township 14 north, range 9 east, together with all accretions to each

of said sections and fractional sections eastward to the thread of Little River in Big Lake.

"It is understood that said property is to be used as a game and fish preserve only, and the conveyors herein reserve to themselves the right to cut and remove all the timber on said lands, and it is a condition of this conveyance that should the Big Lake Shooting Club abandon the property, or said club cease to exist, then and in that event, said lands shall revert to, and the title thereto revest in Paepcke-Leicht Lumber Company, or its successors.

"Witness our hands and seals this the 2d day of July, 1901."

By comparison it will be observed that the deeds differ in the following respect: The deed in the present cases contains the clause "do hereby grant, bargain, sell and convey unto the said W. H. Jackson and J. H. Acklen, trustees as aforesaid, and unto their successors in the offices of president and secretary, respectively, of Big Lake Shooting Club," which clause was not contained in the former deed.

It is now urged that because of this difference in the deeds the opinion in the former case is not controlling here. It is admitted, of course, that appellants are non-residents and were properly convicted upon the charge of unlawful hunting, unless the deed set out above, conveyed such interest in the land as gave to the members of the shooting club the right to hunt and fish thereon.

Appellants state their position as follows: "That, upon careful analysis, nothing is found wanting from the deed presented here to detract from its sufficiency as an effectual conveyance of an estate in the land described. It grants, bargains, sells and conveys unto the grantees 'and their successors' in office, the lands upon which it is admitted the hunting was done. The presence of the granting clause in the deed under consideration vested in the grantees a fee in the lands. The granting clause in the deed now under consideration, both at common law and under the statute, was sufficient to convey a fee

simple estate. Does the last paragraph of the deed, which is merely declaratory of the use to which the land is to be put, so control its construction that the grantee takes no ownership whatever in the land?''

Appellants cite the case of *CarlLee* v. *Ellsberry,* 82 Ark. 211, as sustaining their position. In that case a deed was construed, the granting clause of which conveyed the land described to the grantee in fee simple, but with a proviso in the habendum clause. which limited the estate conveyed in certain contingencies to a life estate. After pointing out the repugnancy it was said: ''The conveyance in fee simple carries with it the power to dispose of the estate by deed. or will. The power of alienation is an inseparable incident of such an estate. So the deed in question conveyed to Mrs. Ellsberry the estate in fee simple with the power to dispose of it. The limitation of it to a life estate was repugnant to the granting clause, and was void.''

(1) But it will be observed that the repugnancy was irreconcilable and the court was called upon to say which of two conflicting clauses should be given effect, and the decision was reached by resort to the common law maxim that ''the first deed and the last will shall operate,'' which maxim finds further expression in the rule of construction that, in case of irreconcilable conflict between the granting and the habendum clause, the former shall prevail.

In so announcing this conclusion the court cited and quoted from the case of *Whetstone* v. *Hunt,* 78 Ark. 230, in which last mentioned case it was said that resort to this rule of construction would be had only in cases of irreconcilable conflict between the clauses of the deed, and the syllabus there is as follows: ''While it is a rule of law that, if there is a clear repugnance between the granting and habendum clauses in a deed, the latter must give way, upon the theory that the deed should be construed most strongly against the grantor, yet it is only where these clauses are irreconcilably repugnant that such a disposition of the question is required to be made.''

The court quoted with approval the following statement from 3 Washburn, Real Property (6 ed.) section 2360, " 'If,' says Mr. Washburn, 'there is a clear repugnance between the nature of the estate granted and that limited in the halbendum, the latter yields to the former; but if they can be construed so as to stand together by limiting the estate without contradicting the grant, the court always gives that construction, in order to give effect to both.' (Cases cited).''

The discussion of the subject was concluded with the statement that "it is our duty to give all parts of the deed such construction, if possible, as that they will stand together.''

The case of *Whetstone* v. *Hunt, supra,* is annotated in 8 Am. & Eng. Ann. Cases, 443, and the case of *CarlLee* v. *Ellsberry, supra,* is annotated in 12 L. R. A. (N. S.) 956. To each of these cases so reported there is an extended note in which a great many cases are collated. See also the cases of *Fletcher* v. *Lyon,* 93 Ark. 5; *Dempsey* v. *Davis,* 98 Ark. 570.

In 8 R. C. L. there is an extended statement of the general rules of construction of deeds and at sections 98, 100 and 101 of this article we find the following statement of the law, applicable to the question now under consideration:

" * * * Applying the doctrine of the ancient common law, that the first deed and the last will shall operate, the technical rule is that where the two clauses are so inconsistent, contradictory or repugnant that they can not be reconciled and both given effect, the first is to be received and the last rejected. It has been declared, however, that the law will hold that part of a deed to precede which ought to take precedence, no matter in what part of the instrument it may be found, wherefore repugnant words must yield to the purpose of the grant clearly ascertained from the premises of the deed, though such words stand first in the grant; and it seems that generally courts of the present day do not feel bound, in any case, to give effect to the first of two repugnant parts of a deed

merely because of its position in the instrument, but rather to effectuate the one, be it first or last, which appears, from an examination of the whole deed, most in harmony with the purpose of the grant and the intention of the parties. * * * It is true that there may be cases in which the old, technical rule has to be applied as a last resort, as, where two conflicting intentions are plainly and unequivocally expressed, there is no alternative but to construe it by this rule, even though it may be arbitrary, but in any proper case it gives way to the rules that the deed is to be considered in all its parts and that the intention governs rather than the form of the instrument or the use of particular words. * * * The modern tendency is to ignore the technical distinctions between the various parts of a deed and to seek the grantor's intention from them all, without undue preference to any, giving due effect to all, including both habendum and granting clause, where such can reasonably be done, in order to arrive at the true intention, even to the extent of allowing the habendum to qualify or control the granting clause where it was manifestly intended that it should do so. And while it can not be doubted that the rule according primary significance to the granting clause still obtains, being sometimes treated as a rule of property, and that if two conflicting intentions are expressed, there is no alternative but to construe the deed by the technical rules, even though they may be denominated arbitrary, nevertheless it is only when the clauses are irreconcilably repugnant that such a disposition of the question is required to be made. The plain intention of the grantor as disclosed by the deed as a whole controls the construction, and a deed must be so interpreted as to make it operative and effective in all its provisions, if its terms are susceptible of such interpretation, for, it has been said, the deed, as the witness to the contract between the parties, should speak the truth, the whole truth, and nothing but the truth. So a construction which requires rejection of an entire clause is not to be admitted, except from unavoidable necessity.''

In the notes to the text quoted are found citations to a great many cases, which may be examined for further discussion of this subject.

The Supreme Court of Virginia in the case of *Wolverton* v. *Hoffman,* 52 S. E. 176, resorted to the rule of construction that a subsequent clause of a deed repugnant to the granting clause was void. But the same court in the case of *Temple's Admr.* v. *Wright,* 26 S. E. 844, said:

"The technical common law rule relied on by appellees, that the habendum clause of a deed yields to the granting clause where there is a repugnance between the estate granted and that limited in the habendum, which is a consequence of the rule that deeds are construed most strongly against the grantor, is supported by abundant authority. It is, however, not to be invoked as a rule of construction except in those cases where the repugnance is such that the intention of the grantor can not be determined with reasonable certainty from the whole instrument, for, where that intention can be ascertained, it is controlling if no legal obstacles lie in the way. *Bassett* v. *Budlong,* 77 Mich. 338, 43 N. W. 984; *Fogarty* v. *Stack,* 86 Tenn. 610, 8 S. W. 846; *Bodine's Admr's.* v. *Arthur,* 91 Ky. 53, 14 S. W. 904; S. C. 34 Am. St. Rep. 164, note; and note to *Berridge* v. *Glassey* (Pa. Sup.), 56 Am. Rep. 324; S. C. 3 Atl. 583."

Applying these rules of construction to the deed in the present cases we find no reason for giving this deed a different construction from that given the deed in the former case, where we said:

"When the deed is construed from its four corners, and especially in reference to language used in the latter part of it, it is evident that there was only an intention to grant the defendants the right to hunt and fish on the land. The deed recites that the property is to be used as a 'fish and game preserve only,' and that the grantors reserve to themselves the right to cut and remove all the timber on the land, and that it is a condition of the conveyance that should the Big Lake Shooting Club abandon the property, or the club cease to exist, the land should

revert to and the title thereto be revested in the **grantors.** We do not think the deed conveyed any interest in the land separate and apart from the right to use it as a fish and game preserve.''

The habendum clause is not essential to the validity of a deed and its omission is quite common.  Strictly speaking, there is no habendum clause in this deed.  But the deed is made up of the granting clause and clauses descriptive of the interest conveyed, and of the purpose of the conveyance.  In the construction of this deed no rule of construction is to be invoked which requires the exclusion of any portion of it from consideration, unless portions of the deed are in irreconcilable conflict with each other.  We must rather take the deed and construe it, as was said in the former case, by its four corners if all of its provisions can be given effect, and when this deed is so construed it is not doubtful what its purpose was. It is highly improbable that any controversy will  ever arise between the shooting club, the grantee, and the lumber company, the grantor, as to the interest conveyed, and if such controversy should arise we think without doubt that it would be held to have conveyed only the privilege of hunting and fishing on the lands there described, and this privilege only for such time as the Big Lake Shooting Club should continue to exist and use the land for the purpose there stated.

The deed does use the words ''grant, bargain, sell and convey,'' and these words do import a conveyance of a fee simple title and operate as a special warranty under the provisions of Section 731 of Kirby's Digest unless limited by express words of such deed.'' Section 731 Kirby's Digest.  But this deed so limits the interest conveyed.  *McDill* v. *Meyer,* 94 Ark. 615.

We think it would not be seriously contended that the grantor conveyed the timber standing or being on said lands, yet the interest which ordinarily passes by a deed, the granting clause of which uses the words ''grant, bargain and sell,'' would carry the title to the timber with it.  Yet if we are to construe the deed as con-

tended by appellants it would necessarily follow that the title to the timber passed to the grantee. It is apparent that the scrivener did not undertake to divide this deed into formal parts, and as has been said there is strictly no habendum clause. The entire deed is devoted to the granting clause and the clauses describing the purpose of the deed and the interest conveyed, and we hold there is no such repugnancy between these recitals as necessitates a resort to rules of construction which require a choice between conflicting provisions.

Having held in the former case (*State* v. *Stokes, supra*) that a deed to non-residents which grants only the right to hunt and fish on the land, and which right was to revert if the property was abandoned, did not convey any interest therein so as to entitle non-residents to shoot and fish thereon, it follows that appellants did not acquire by this deed that right to hunt and fish, which is possessed by non-resident owners of land.

(2) It is insisted now, as it was in the former case, that appellants have title to the lands described in the conveyance by adverse possession. The area included within the description contained in said deed is about 27,000 acres, and it is shown by the agreed statement of facts that appellants have a clubhouse located upon lands lying within the meander of said lake, a portion of which is enclosed with a fence, but not to exceed two or three acres, and that no part of the shooting herein complained of was done within any enclosure belonging to said shooting club. It is further recited in the agreed statement of facts that the officers of this club maintained in the Federal court an injunction suit to prevent non-members of the club from hunting and fishing on the lands in controversy, and that an injunction was granted in said case, and it is further stated that said club has its keepers and wardens for the purpose of ejecting non-members from said lands, and that the club has fishing and hunting equipment and paraphernalia consisting of boats, skiffs, fishing tackle, house-boats, blinds, decoys, etc., and several tenant houses in which its employees reside, and that

the wardens of the club have kept posted printed notices fastened upon the trees and the buildings of said club forbidding all persons from trespassing, hunting or shooting upon said lands.

Such acts and use of the lands in controversy will not support a claim of title by adverse possession. *Scott* v. *Mills,* 49 Ark. 266; *Brown* v. *Bocquin,* 57 Ark. 97; *John Henry Shoe Co.* v. *Williamson,* 64 Ark. 100; *Driver* v. *Martin,* 68 Ark. 551; *Earle Imp. Co.* v. *Chatfield,* 81 Ark. 296; *Files* v. *Jackson,* 84 Ark. 587; *Langhorst* v. *Rogers,* 88 Ark. 318; *Connerly* v. *Dickinson,* 81 Ark. 258; *Boynton* v. *Ashabranner,* 75 Ark. 415.

The judgments are therefore affirmed.